Filed 7/9/26  P. v. Mejia CA4/3

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>NATHAN ALEXANDER MEJIA,<br><br>    Defendant and Appellant. | G064560<br><br>(Super. Ct. No. 21CF2417)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Elizabeth G. Macias, Judge. Affirmed as modified.

Jared G. Coleman, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Arlene A. Sevidal, Assistant Attorney General,

Steve Oetting and Maxine Hart, Deputy Attorneys General, for Plaintiff and Appellant.

*      *      *

Appellant Nathan Alexander Mejia was convicted of carjacking, kidnapping, and assault with an assault weapon, as well as various sentencing enhancements. On appeal, he contends the trial court abused its discretion by failing to apply a statutory presumption pursuant to Penal Code[1] section 1170 in favor of the lower term and by failing to dismiss the sentencing enhancements under section 1385. We conclude the court did not abuse its discretion.

The Attorney General argues on appeal that the judgment should be corrected to accurately reflect that the crime-bail-crime enhancements were stayed. We agree and modify the abstract of judgment to reflect that these enhancements were imposed and stayed. We otherwise affirm the judgment.

FACTS

A.    *Facts Related to the Crimes*

On August 17, 2021, the victim was driving in Tustin when she saw a man, later identified as Mejia, moving back and forth across the street, about 20 to 30 feet in front of her car. She slowed down to avoid hitting Mejia. Mejia suddenly ran toward the victim's car. She slammed on the brakes and came to a complete stop. The victim noted Mejia was holding something black, which she at first thought was a bat. She tried to put her car in reverse but accidentally put it in park instead, which automatically unlocked the car doors.

---

[1]  All further statutory references are to the Penal Code.

2

Mejia opened the front passenger side door and got in. He pointed a rifle at the victim's head and yelled, "Go, go, go." Mejia also said that someone was trying to kill him. The victim began to drive but decided she needed to get out of the car. After driving approximately half a block, she started to slow down and opened her car door. As she was about to jump, Mejia said, "Don't do it," and she felt something hit her head. The victim then "launched" herself out of the car. As she jumped, one of the car's tires rolled over her leg.

When the victim landed on the pavement, she was in such severe pain that she could not move. She watched as her car drove away from the scene. The victim suffered serious injuries from jumping out of the car, including asphalt burns on her back, hips, and leg, tire marks on the back of her leg, and severe injury to her knee.

That night, a man called police after finding a semiautomatic rifle in his backyard, which was located approximately 100 yards from where the victim jumped out of her car. Mejia's DNA was found on the gun. The next morning, police found the victim's car at Mejia's home, which was around 200 to 300 yards from where she jumped out of the car.

The victim was diagnosed with a leg injury called "Morel-Lavallee lesion," which is a type of "degloving" injury, where the skin and subcutaneous tissue are separated from the underlying tissue that holds together the muscles, blood vessels, and nerves. She spent almost three weeks in the hospital and testified she has difficulty walking and standing for long periods of time, as well as nerve damage and severe pain, which are likely to be permanent.

The defense called one witness in its case. Mejia's stepfather, J.P., testified that he was with Mejia sometime between 10:00 p.m. on

3

August 17 through the next morning. While he was with Mejia at Mejia's residence, Mejia said, "somebody is out to get me." Mejia was acting frantic and out of control, so J.P. took Mejia to his shop; Mejia made statements that people were surrounding the shop, and he asked J.P. to check the doors to make sure nobody was there.

### B. Procedural History

Mejia was charged with carjacking (§ 215, subd. (a); count 1), kidnapping (§ 207, subd. (a); count 2), and assault with an assault weapon (§ 245, subd. (a)(3); count 3.) It was alleged that Mejia committed each count while released from custody on bail in three separate felony cases (§ 12022.1, subd. (b)), that he personally inflicted great bodily injury in the commission of each count (§ 12022.7, subd. (a)), that he personally used a firearm in the commission of counts 1 and 2 (§ 12022.53, subd. (b)), and that he personally used an assault weapon in the commission of count 3 (§ 12022.5, subd. (b)). The information alleged the following aggravating circumstances: (1) the offenses involved great violence, great bodily harm, threat of great bodily harm, and other acts disclosing a high degree of cruelty, viciousness, and callousness (Cal. Rules of Court,[2] rule 4.421(a)(1)); and (2) Mejia was armed with and used a weapon during the offense (rule 4.421(a)(2)).

The jury found Mejia guilty of all counts and found true all the enhancement allegations and aggravating circumstances, except the crime-bail-crime enhancements, which Mejia admitted. The trial court sentenced Mejia to the midterm of eight years on count 3, three years for the great bodily injury enhancement, and five years for the assault weapon

---

[2] All further references to rules are to the California Rules of Court.

4

enhancement, for a total term of 16 years. The remaining counts and enhancements were stayed.

## C.    Sentencing Hearing

Mejia's probation report documented childhood abuse and trauma. The probation report identified Mejia's age as a mitigating factor because Mejia was 21 at the time he committed the crimes. The prosecution and defense both filed sentencing briefs. The prosecution argued the only mitigating factor was Mejia's lack of prior convictions. Mejia's sentencing brief requested the low term of four years on count 3. The defense's sentencing brief did not specifically identify any mitigating factors but argued the low term was appropriate because Mejia did not intend to harm the victim.

At the sentencing hearing, the trial court noted it had reviewed the sentencing briefs and the probation report, which attached letters of support from Mejia's friends and family. The court then addressed the mitigating factors under rule 4.423. The court stated it had "look[ed] very carefully at the probation report" and asked both counsel as to whether they believed Mejia's childhood abuse and trauma as documented in the probation report qualified as a mitigating circumstance under rule 4.423(b)(3). (*Ibid.* ["The defendant experienced psychological, physical, or childhood trauma, including, but not limited to, abuse, neglect, exploitation, or sexual violence and it was a factor in the commission of the crime"].)

The court noted that, according to the probation report, Mejia had a "strained relationship with his mother as a result of how he was conceived," and his mother and stepfather "engaged in heavy drinking and domestic violence." The court also noted Mejia's exposure to gangs and drug use at a young age, while living with his maternal grandmother, as well as

5

that Mejia returned to live with his mother during high school to protect her from his stepfather.

When defense counsel failed to directly address rule 4.423(b)(3), the trial court again focused on whether it qualified as a mitigating factor. The court also noted other possible mitigating factors, including Mejia's youth, his drug addiction, the fact that application of an enhancement could result in a sentence over 20 years, and multiple enhancements were alleged in a single case. The court then stated it had made the notes it needed to make "with regard to the criteria that the [c]ourt must consider," and invited argument from counsel. Both the prosecutor and defense counsel provided detailed argument as to the applicability of mitigating and aggravating factors.

After hearing argument, the trial court stated, "I very carefully review[ed] everything that has been submitted, including the probation report, briefs, as well as the law that the [c]ourt is required to apply." The court then focused on the seriousness of the crime, including the extreme injury Mejia caused the victim. The court noted that, although "everyone makes mistakes, the degree to which . . . Mejia made a mistake" was going to "cost him severely." It also stated that the victim experiences the consequences of Mejia's actions "every single day," and described her injuries as "horrific."

The trial court found the following aggravating circumstances applied: "the crime involved great violence, great bodily harm, threat of great bodily harm, or other act disclosing [a] high degree of cruelty, viciousness, or callousness" (rule 4.421(a)(1)); Mejia "was armed with or used a weapon during the crime" (rule 4.421(a)(2)); and he "engaged in violent conduct that indicates a serious danger to society" (rule 4.421(b)(1)). The court clarified

6

that it was relying only on Mejia's conduct in the present case, not the conduct in his other pending cases.

The trial court found the following mitigating circumstances applied: (1) Mejia had no prior record (rule 4.423(b)(1)); (2) he had "experienced psychological or physical or childhood trauma, including abuse and neglect" (rule 4.423(b)(3)); (3) "application of an enhancement could result in a sentence of over 20 years" (rule 4.423(b)(10); and (4) "multiple enhancements [were] alleged in a single case" (rule 4.423(b)(11)).

Before pronouncing sentence, the trial court stated it had considered the required sentencing factors  and the general objectives of sentencing in rule 4.410.

## DISCUSSION

## I.

### THE COURT DID NOT ABUSE ITS DISCRETION IN IMPOSING THE MIDDLE TERM

Mejia argues the trial court abused its discretion by imposing the middle term on count 3 because his childhood trauma and youth triggered a statutory presumption to impose the lower term under section 1170, subdivision (b)(6) (section 1170(b)(6)). He argues the case must be remanded for resentencing because there was no indication the court was aware of the statutory presumption in favor of the lower term, and the court did not expressly state that the aggravating circumstances outweighed the mitigating circumstances such that the midterm sentence was appropriate. We conclude the court did not abuse its discretion.[3]

---

[3] Because we address Mejia's claim on the merits, we decline to consider whether the claim is forfeited based on defense counsel's failure to object at trial or whether such failure constitutes ineffective assistance of counsel.

7

*A.      Legal Standard*

Effective January 1, 2022, section 1170, subdivision (b)(1), makes the middle term the presumptive sentence for a determinate term of imprisonment. (*People v. Achane* (2023) 92 Cal.App.5th 1037, 1041.) Section 1170, subdivision (b)(2), authorizes an upper term sentence "only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term and the facts underlying those circumstances have been stipulated to by the defendant or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial."

Additionally, section 1170(b)(6) provides that, notwithstanding section 1170, subdivision (b)(1), "unless the court finds that the aggravating circumstances outweigh the mitigating circumstances [so] that imposition of the lower term would be contrary to the interests of justice, the court shall order imposition of the lower term" if any of certain enumerated factors "was a contributing factor in the commission of the offense."

We review a court's sentencing choices for abuse of discretion. (*People v. Fredrickson* (2023) 90 Cal.App.5th 984, 988 (*Fredrickson*).) A defendant is entitled to a sentencing decision made in the exercise of informed discretion, and a court that is unaware of the scope of its discretion cannot exercise informed discretion. (*People v. Salazar* (2023) 15 Cal.5th 416, 424.)

"To prove an abuse of discretion, "'[t]he burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary. [Citation.] In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not

be set aside on review.'" [Citation.] To meet this burden, the defendant must 'affirmatively demonstrate that the trial court misunderstood its sentencing discretion.' [Citation.] When 'the record shows that the trial court proceeded with sentencing on the erroneous assumption it lacked discretion, remand is necessary so that the trial court may have the opportunity to exercise its sentencing discretion at a new sentencing hearing. [Citations.] Defendants are entitled to "sentencing decisions made in the exercise of the 'informed discretion' of the sentencing court," and a court that is unaware of its discretionary authority cannot exercise its informed discretion.' [Citation.] If the record is silent, however, the defendant has failed to sustain his burden of proving error, and we affirm. [Citation.]" (*People v. Lee* (2017) 16 Cal.App.5th 861, 866-867; see also *People v. Ochoa* (2020) 53 Cal.App.5th 841, 852 [appellate court assumes trial court understood and properly exercised its sentencing discretion, and error will not be presumed from a silent record]; rule 4.409 ["[U]nless the record affirmatively reflects otherwise," appellate court presumes sentencing court considered all relevant factors in the rules].) The burden is on the party attacking the sentence to show the court misunderstood its sentencing discretion. (*Fredrickson, supra*, 90 Cal.App.5th at p. 988.)

B.    *Analysis*

Mejia first argues it is unclear whether the trial court was aware of the low term presumption because the court expressly mentioned his childhood trauma but did not cite to or make express findings regarding section 1170(b)(6).

After discussing Mejia's drug addiction and childhood trauma, the trial court detailed the seriousness of the crime, the long-term effects Mejia's violence had on the victim, and the danger his conduct presented to

9

society. Nothing in the court's acknowledgement of Mejia's childhood trauma and abuse suggests that it misunderstood its obligation to apply section 1170(b)(6), particularly when this acknowledgement was followed by a recitation of the aggravating factors. (*People v. Nielsen* (2026) 119 Cal.App.5th 816, 825–826 (*Nielsen*) [no evidence court was unaware of section 1170(b)(6) where it noted defendant's childhood trauma and then weighed it against seriousness of the crime and other factors].)

As noted, section 1170(b)(6) requires the imposition of the lower term when certain mitigating circumstances are present "unless the court finds that the aggravating circumstances outweigh the mitigating circumstances." Consistent with this provision, the trial court expressly discussed the aggravating and mitigating circumstances and decided to impose a middle-term sentence. The court was diligent in considering the mitigating factors under rule 4.423. The court considered Mejia's lack of a prior criminal record, his childhood trauma, his age of 21 at the time of the offense, whether the application of an enhancement would result in a sentence greater than 20 years, and the presence of multiple enhancements. The trial court sought input from the parties regarding the mitigating factors it was considering. Just before imposing sentence, the court identified the mitigating factors it was considering by their subsection number in rule 4.423, citing subsections (b)(1), (3), (10), and (11).[4] The court also considered the nature of the victim's severe injuries.

---

[4] The trial court did not identify rule 4.423(b)(6), which addresses whether a defendant was under 26 at the time of the commission of the crime, as a mitigating factor. However, the record reflects the court was aware Mejia was 21 at the time of the crime and, given the court's diligence

Under these circumstances, the court was not required to explicitly address section 1170(b)(6). In *People v. Caparrotta* (2024) 103 Cal.App.5th 874, 905 (*Caparrotta*), the court stated, "We reject Caparrotta's argument because nothing in the record establishes that the trial court was unaware of its obligations under Penal Code section 1170, subdivision (b)(6) or that it failed to apply that provision. 'In the absence of evidence to the contrary, we presume that the court "knows and applies the correct statutory and case law."' [Citation.] Thus, although the trial court did not specifically mention . . . section 1170, subdivision (b)(6), it is presumed to have known of the provision. Moreover, because Caparrotta highlighted . . . section 1170, subdivision (b)(6) in his sentencing memorandum, we presume that the trial court was aware Caparrotta was seeking to benefit from that provision."

Although the trial court did not explicitly mention section 1170(b)(6), the record does not affirmatively demonstrate that the court misunderstood or was unaware of its sentencing discretion under that section. The court stated it was aware of Mejia's childhood trauma and age at the time of the crimes. The record supports the inference that the court balanced the aggravating and mitigating factors and considered Mejia's childhood trauma and age. After conducting this balancing, the court determined that the middle term of eight years was the appropriate sentence for count 3. Although the court did not expressly mention section 1170(b)(6), it complied with section 1170(b)(6) by implicitly finding that the aggravating factors outweighed the mitigating factors. Specifically, the court could have

_____

in identifying the applicable mitigating factors, we conclude its failure to identify this factor was inadvertent.

11

reasonably found that the victim's "horrific" injuries and Mejia's use of an assault weapon outweighed the mitigating factors.

Moreover, the fact Mejia's sentencing brief did not specifically reference section 1170(b)(6) does not demonstrate that the court was unaware of the low term presumption. (See *Nielsen*, *supra*, 119 Cal.App.5th at p. 827, fn. 6 [rejecting argument that, because the defendant's sentencing brief did not mention section 1170(b)(6), it rendered the trial court record ambiguous].)

Nor do we agree with Mejia that we must remand the case for a new sentencing hearing because the trial court did not make explicit findings on the record pursuant to section 1170(b)(6). Recent cases addressing section 1170(b)(6) have rejected the argument that the trial court is required to make an express finding that "'imposition of the lower term would be contrary to the interests of justice.'" (*Caparrotta*, *supra*, 103 Cal.App.5th at p. 906, fn. 14; see also *Nielsen*, *supra*, 119 Cal.App.5th at p. 828.) Furthermore, where a statute requires a statement of reasons, rule 4.406(a) requires a judge to "state in simple language the primary factor or factors that support the exercise of discretion," but "[t]he statement need not be in the language of the statute or these rules." Here, the court considered the proffered evidence, balanced the mitigating and aggravating factors, and applied the relevant sentencing laws. Under these circumstances, we cannot say the court abused its discretion.

## II.

### THE COURT DID NOT ABUSE ITS DISCRETION IN DENYING MEJIA'S MOTION TO DISMISS THE ENHANCEMENTS

Mejia argues the trial court committed reversible error in denying his request to dismiss the enhancements. He claims the court "found that at least three of the mitigating circumstances enumerated in section

12

1385[, subdivision ](c)(2) were present," i.e., childhood trauma, mental illness, and multiple enhancements were alleged. However, the court "fail[ed] to properly apply" the factors provided for in section 1385, subdivision (c) (section 1385(c)), which requires the court to afford great weight to mitigating circumstances when considering whether to dismiss enhancements. Mejia further argues the court erred in failing to make an express finding that dismissing the enhancements would not be in the furtherance of justice. We conclude the court did not abuse its discretion.[5]

## A.  Legal Standard

Section 1385 gives a sentencing court discretion to dismiss or strike a sentencing enhancement, or strike the additional punishment for the enhancement, in furtherance of justice. (§ 1385, subds. (a), (b), (c)(1).) In 2022, section 1385 was amended to include subdivision (c), which now provides that "[n]otwithstanding any other law, the court shall dismiss an enhancement if it is in the furtherance of justice to do so, except if dismissal of that enhancement is prohibited by any initiative statute." (§ 1385(c)(1).) Section 1385(c)(2) provides as follows: "In exercising its discretion under this subdivision, the court shall consider and afford great weight to evidence offered by the defendant to prove that any of the mitigating circumstances in subparagraphs (A) to (I) are present. Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety." The term "'[e]ndanger public safety'" is statutorily defined as

_____

[5] As with Mejia's other claim of error, because we address this claim on the merits, we decline to address forfeiture or ineffective assistance of counsel.

13

"a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others." (*Ibid.*)

The requirement in section1385(c)(2) that a sentencing court "afford great weight" to mitigating circumstances does not create a rebuttable presumption in favor of dismissing an enhancement unless the trial court finds that dismissal would endanger public safety. (*People v. Walker* (2024) 16 Cal.5th 1024, 1033 (*Walker*).) Rather, absent a finding that dismissal would endanger public safety, a court retains the discretion to impose or dismiss enhancements, but it must assign significant value to the enumerated mitigating circumstances when they are present. (*Id.* at p. 1029.)

Thus, "the presence of an enumerated mitigating circumstance will generally result in the dismissal of an enhancement, unless the sentencing court finds substantial, credible evidence of countervailing factors that 'may nonetheless neutralize even the great weight of the mitigating circumstance, such that dismissal of the enhancement is not in furtherance of justice.'" (*Walker, supra,* 16 Cal.5th at p. 1036.) However, even where mitigating circumstances are present, the court must engage in a "'holistic balancing'" which gives these mitigating factors "'increased significance and importance.'" (*Ibid.*) And even when mitigating factors are present and given great weight, they may be offset by "substantial, relevant, and credible evidence of aggravating factors." (*Ibid.*) "'[T]he ultimate question . . . remains whether it is in the furtherance of justice to dismiss an enhancement.'" (*Id.* at p. 1033.)

"Section 1385(c) does not mean that, whenever a listed mitigating circumstance is present, the trial court must dismiss all enhancements unless it finds dismissal would endanger public safety. The California Supreme Court has explained that, even without 'a finding that

14

dismissal would endanger public safety,' the trial 'court retains the discretion to impose or dismiss enhancements provided that it assigns significant value' to the presence of any listed mitigating circumstances." (*People v. Bravo* (2025) 107 Cal.App.5th 1144, 1157 (*Bravo*).)

The trial court "is presumed to have considered all of the relevant factors in the absence of an affirmative record to the contrary." (*People v. Myers* (1999) 69 Cal.App.4th 305, 310.) When, as here, the record is silent as to the court's reasons, we presume that the court "'correctly applied the law.'" (*People v. Carmony* (2004) 33 Cal.4th 367, 378.) "Second, '[a]bsent evidence to the contrary, we presume that the trial court knew the law and followed it.'" (*Bravo, supra*, 107 Cal.App.5th at p. 1157.) We review for abuse of discretion a lower court's decision not to strike a sentencing enhancement under section 1385. (*People v. Mendoza* (2023) 88 Cal.App.5th 287, 298.) A court abuses its discretion only when its decision is arbitrary, capricious, or patently absurd. (*Ibid.*)

B.    *Analysis*

The trial court expressly considered Mejia's childhood trauma and the presence of multiple enhancements. The court also explored whether the crimes were connected to a mental illness.

First, as to Mejia's childhood trauma, the trial court addressed this circumstance with the parties even though the sentencing briefing did not raise this issue. The record reflects the trial court gave this circumstance significant value. For example, the court described its view of the childhood trauma by noting that Mejia had a "strained relationship with his mother as a result of how he was conceived," and his mother and stepfather "engaged in heavy drinking and domestic violence." The court observed that Mejia "described living with his maternal grandmother, which exposed him at a

15

young age to gangs and drugs." Later in the sentencing hearing, the court stated, "the defendant experienced psychological or physical or childhood trauma, including abuse and neglect. The [c]ourt does believe that this factor applies for all of the reasons previously stated by the court."

Second, the trial court addressed the presence of multiple enhancements. For counts one and two, the jury returned true findings as to the great bodily injury enhancement (§ 12022.7, subd. (a)) and the personal use of a firearm enhancement (§ 12022.53, subd. (b)). For count 3, the jury returned true findings as to the great bodily injury enhancement (§12022.7, subd. (a)) and personal use of an assault weapon enhancement (§ 12022.5, subd. (b)). The jury found the enhancements true as to each crime. Based on these findings, the multiple enhancement circumstance applied under section 1385(c)(2)(B).

As with the childhood trauma circumstance, the trial court initiated this discussion. In referring to rule 4.423(b)(11), the court stated, "I also note neither counsel addressed subdivision (b)(11). Does that section not apply, multiple enhancements are alleged in a single case." Both counsel agreed that this circumstance applied. During the sentencing hearing, the prosecutor expressed his view that the court should impose both enhancements because striking the enhancements "would completely devalue the seriousness of the crime." The court expressly found that the multiple enhancements mitigating factor applied under rule 4.423(b)(11).

Third, the trial court considered whether Mejia suffered from a mental or physical condition under rule 4.423(b)(2). Section 1385(c)(5) states in part, "a mental illness is a mental disorder as identified in the most recent edition of the Diagnostic and Statistical Manual of Mental Disorders, including, but not limited to, bipolar disorder, schizophrenia, schizoaffective

16

disorder, or post-traumatic stress disorder but excluding antisocial personality disorder, borderline personality disorder, and pedophilia."

The trial court stated, "I believe that there was evidence during the trial that he was delusional." It also stated, "I have oftentimes received reports in other cases of defendants who are addicted to drugs. And the [Diagnostic and Statistical Manual-Fifth Edition] does diagnose them with a controlled substance disorder." After the court heard from the parties on this issue, it concluded, "While we certainly had a discussion regarding the [c]ourt's previous history in other cases whereby there is a [Diagnostic and Statistical Manual-Third Edition] diagnosis regarding controlled substances, I'm not going to make any such diagnosis. And I don't find that this section applies."

The testimony from the victim and Mejia's stepfather supported the trial court's conclusion that there was evidence Mejia was delusional at the time of the crimes. There was no evidence, however, that Mejia had a "mental disorder" as defined in section 1385(c)(5). Because there was no expert testimony that diagnosed Mejia with a mental disorder identified in the Diagnostic and Statistical Manual of Mental Disorders, the court correctly concluded that it could not make such a diagnosis. Accordingly, the court did not act capriciously or arbitrarily in finding that Mejia did not have a mental disorder within the meaning of section 1385(c)(2)(D) and (5).

We also find that the trial court gave significant value to the childhood trauma and multiple enhancement circumstances as required by *Walker, supra,* 16 Cal.5th at page 1029. The record demonstrates that the court initiated the discussion regarding these circumstances. The court discussed these circumstances with the parties and sought their input. Although the court did not expressly refer to section 1385(c) or expressly

state that it had balanced these factors against credible evidence of countervailing factors, the record supports the inference that the court conducted the analysis required under *Walker*. The court heard from the parties as to applicability of the childhood trauma and multiple enhancement circumstances. It diligently considered these circumstances and recognized their importance by initiating the discussion as to these circumstances.

Against the significant value the trial court gave to these circumstances, it had substantial, credible evidence of countervailing factors. Specifically, the evidence showed that Mejia pointed an assault rifle at the victim's head after entering her car. In order to escape, the victim jumped out of a moving car and suffered injuries that the court described as "horrific." The court also considered the victim's impact statement. Based on these countervailing factors, the court could reasonably conclude that imposition of both the great bodily injury and personal use of an assault weapon enhancements for count 3 was proper.

We recognize the *Walker* case had just been decided at the time of sentencing in this case. The record, however, supports the inference that the court conducted the analysis required by *Walker* as discussed above.

We also acknowledge the trial court did not expressly refer to section 1385(c) or expressly conduct the balancing required by *Walker*. The court, however, balanced the relevant factors, and the record does not affirmatively reflect that the court misunderstood its discretion or misapplied the law. The fact the court did not expressly state on the record that it was declining to exercise its discretion under section 1385(c)(1) to strike the enhancements does not require remand. In assessing section 1385, a sentencing court "'is presumed to have considered all of the relevant factors in the absence of an affirmative record to the contrary.'" (*People v. Brugman*

18

(2021) 62 Cal.App.5th 608, 637.) From our review of the record, we find that the trial court assigned significant weight to the mitigating factors and then impliedly found that the countervailing factors outweighed the mitigating factors.

Consistent with *Walker*, we note the trial court could have chosen not to dismiss any of the enhancements without making a public safety finding. *Walker* and *Bravo*, however, affirm the trial court's discretion to impose both enhancements in the furtherance of justice as long as the court assigned significant value to the mitigating circumstances in section 1385(c)(2). Even if the court did not find Mejia posed a threat to public safety, it could still conclude dismissal of the enhancements was not in furtherance of justice under *Walker*.

Accordingly, we conclude the trial court did not fail to properly apply section 1385(c) when imposing sentence.

III.

CORRECTION OF ABSTRACT OF JUDGMENT

On appeal, the Attorney General requests that we correct the abstract of judgment to reflect that the crime-bail-crime enhancements were stayed. The abstract of judgment does not include the crime-bail-crime enhancements, and the court did not address them at sentencing. However, the minutes from the sentencing hearing state that punishment under section 12022.1, subdivision (b), was stayed.

"When a trial court's intention is clear, we 'need not remand for resentencing, but can modify the judgment to reflect the intent of the trial court.'" (*People v. Mendoza* (2016) 5 Cal.App.5th 535, 539.) Here, it is clear the court intended to stay the crime-bail-crime enhancements but failed to include the stayed enhancements on the abstract of judgment. Accordingly,

19

we modify the judgment to reflect that the crime-bail-crime enhancements were imposed and stayed.

## DISPOSITION

We modify the judgment to reflect the fact that the crime-bail-crime enhancements were imposed and stayed. The trial court is directed to prepare an amended abstract of judgment reflecting the modification and forward a certified copy to the Department of Corrections and Rehabilitation. In all other respects, the judgment is affirmed.

SCHWARM, J.*

WE CONCUR:

MOTOIKE, P. J.

MOORE, J.

*Judge of the Orange County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.